## Atkyn *v.* Wabash Ry. Co., (Ward, Intervenor.)

*(Circuit Court, N. D. Ohio. November 2, 1889.)*

Master and Servant—Railroad Employes—Construction of Statute.

Act Ohio, March 23, 1888, for the protection of railroad employes, requires every railroad in the state "to adjust, fill, or block the frogs, switches, and guard-rails on its tracks," so as to prevent the feet of its employes from being caught therein. *Held* that, where two railway companies receive cars from each other over a delivery track at a certain point, a person employed by one of them to take the number of its cars, and inspect their seals, as trains were made up at such place by the other, is an employe of the latter, within the meaning of this statute.

v.41F.no.4—13

Intervening Petition of Kate Ward, administratrix of John Ward, against the receiver, for the death of the intestate.

*Scribner & Hurd*, for petitioner.

*Alex. Smith*, for receiver.

HAMMOND, J., (*charging jury.*)   This is what we call an "issue out of chancery," and comes to us from the equity side of this court, in pursuance of a practice that submits to a jury in a court of law questions of fact that ordinarily, and but for the fact that the equity court is proceeding to exercise its jurisdiction in the premises, would be cognizable in a court of law.   It has always been my judgment that a jury should pass upon such questions as these, and, while it must be conceded that the court of equity has the power, without a violation of the constitutional right of trial by jury, to try them in its own way, by the chancellor or through a reference to a master, yet it is the practice of those courts to submit, upon application of the parties, those questions of fact peculiarly cognizable in a court of law to that court for trial, and this out of deference to the sensibilities of our race of people against the impairment of their cherished institution of a trial by jury, which in these states we sought to preserve by constitutional provisions, none of which are so sedulous to preserve it as the federal constitution itself.   Courts of equity accomplish their purpose of yielding to the parties this preference for a trial by jury, either by permitting them, in proper cases, to proceed against their receivers by a regular suit at law, or, by the method adopted in this case, of sending to the court of law issues of fact to be tried by the jury; and, it having seemed to this court, sitting in equity in this case, that recent legislation by congress is a manifestation of its legislative will that this preference for trial by jury shall be acknowledged and favored by the courts of equity, if not a rebuke to them for the practice of denying it in the exercise of their power to refer them to a master in equity, these issues have been certified to us for trial.   And it has been done in the fullest confidence that your impartial judgment will be exercised, so that there shall be none of that complaint, so often heard, that jurors are prejudiced against and unfavorable to corporations, and especially to railway companies, in suits like this.   This complaint is generally unfounded, perhaps, although there do sometimes seem to be verdicts that indicate that the jury has yielded to influences and impulses that should find no place in the consideration of such cases, potential as they may be in exciting sympathy or indignation under the peculiar circumstances of the case.   But the courts of equity need not fear this result in proceedings like this, because, if the verdict is not satisfactory to that court, and does not commend itself to its own judgment, it may disregard it.   The verdict is only advisory to the chancellor.   Therefore, advising you of this, I deem it proper in the outset to caution you to bring to consideration of this case only your intelligent and impartial judgment; to discard all extraneous impulses of every kind, so that you may do even-handed justice between the parties, according to your oath; and to answer these issues by a verdict that shall vindicate your intelligence,

justify your conscience, demonstrate your absolute fairness and freedom from all improper prejudices or influences, and, moreover, command the confidence of the court of equity, which has invoked your assistance in this controversy. That you will do this, I do not in the least doubt, and make these remarks only to caution you, and quiet the fears, that always gather around a case like this, that the jury will be guided by its sympathy for misfortune, rather than by the facts and the law of the case, as we find them in the proof.

The issues submitted to you are these: (1) Whether John Ward came to his death through the negligence of the respondent, as averred in the intervening petition; (2) whether the said John Ward was guilty of negligence which contributed to his death, as averred in the answer of the respondent; (3) what damages the complainant is entitled to receive from the respondent by reason of the death of the said John Ward, if it shall be proved that he was killed through the negligence of the respondent, as averred in the intervening petition, and without contributory negligence on his part. These issues you will answer specifically, saying "Yes" or "No" to the first two; and, if you find both of these in favor of the petition, then to the last you will affix as your answer whatever sum you determine as damages. If you find either of the first two in favor of the respondent, you will answer "None" to the last.

Now, the intervening petition avers that John Ward came to his death through the negligence of this railroad company, while in the hands of the receiver, operating it under the jurisdiction of that court which sent these issues to us, but nevertheless bound to comply with an act of the legislature of Ohio passed on the 23d day of March, 1888, which I shall now read to you:

"An act for the protection of railroad employes. Section 1. Be it enacted by the general assembly of the state of Ohio, that every railroad corporation operating a railroad, or part of a railroad, in this state, shall, before the first day of October, in the year 1888, adjust, fill, or block the frogs, switches, and guard-rails on its tracks, with the exception of guard-rails on bridges, so as to prevent the feet of its employes from being caught therein. The work shall be done to the satisfaction of the railroad commissioner. Sec. 2. Any railroad corporation failing to comply with the provisions of this act shall be punished by a fine of not less than one hundred dollars, nor more than one thousand dollars. Sec. 3. This act shall take effect on its passage."

Possibly, this act of the legislature of the state of Ohio is only a declaration of that which the law would require of a railroad company if we had no such act, because there is no question that a railroad company owes to its employes the duty of furnishing them that kind of machinery, and that kind of track, and that kind of tools with which their work is to be done, that shall be reasonably safe for them, in the exercise of their duty to the company. It is not a requirement of the common law that they shall do any specific and particular thing. It is a requirement that they shall do that which reasonable and prudent masters ought to do in the discharge of their duty to their servants, under the circumstances. In other words, the law of master and servant applies to railroad companies, and requires that they shall, in the tools

and instruments they furnish to their laborers, see that they are reasonable appliances of safety and prudence. On the other hand, he who works for a railroad company knows he is engaged in a hazardous employment, and is presumed to know the ordinary risks of that employment, which he incurs. The obligation and the responsibility, as you see, are mutual on the part of each towards the other. The legislature of the state of Ohio, in the exercise of its authority, had the undoubted right to prescribe regulations for the conduct of railroads in the state of Ohio, and that it was the duty of this company to obey the statute there is no doubt. It does not mean that the railroad companies shall block their guard-rails in such a manner as to destroy their efficiency. It does not mean that they shall protect the employes at the hazard of injuring the operation of the railroad, and destroying the usefulness of the track. It simply means that the railroad company shall block and fill them in such a way as will protect the feet of employes from being caught therein, and at the same time imposes no unnecessary or unreasonable impairment of the function of the particular guard-rail or frog itself. Proof has been introduced before you in this case to show how this process of blocking the guard-rail and frogs must be done in the way of railroad and track building, so as best to protect the feet of the employes, and at the same time not to impair the efficiency of the contrivance itself. It is for you to say from that proof, from all the facts and circumstances as they appear here, how that could be done. It is true, in this case, that the company has neglected to block and fill this guard-rail at all. If you find that it could have so filled and blocked it that it would reasonably protect the employes, and at the same time leave the efficiency of the contrivance for the use of the railroad companies, and by reason of that failure on the part of the railroad company to comply with the statute, John Ward lost his life, there can be no doubt about the liability of this respondent, if John Ward did not contribute to the loss of his own life by his own negligence. If you find that John Ward lost his life in a way to which the failure to block this guard-rail did not contribute, then this respondent cannot be held liable, even if there were no reasonable blocking of the rail. The respondent cannot be liable in such a case, because it is an essential requirement of the plaintiff's right to recover that his life should have been lost by the failure to comply with the statute. The mere fact that the railroad company failed to comply with the statute does not give John Ward's administrator any cause of action against the respondent, if he would have lost his life, under the circumstances, notwithstanding the failure.

Now, I do not know that I need say anything else to you, gentlemen, upon that subject. I will not go over this proof in detail, and state what this witness and that said about it, because it is unnecessary that I should do so. You know the proof, and you have seen the guard-rail here before you. You have had the testimony of railroad men, trackmen, and all kinds of experts. You know, from your own knowledge and experience, how this thing is. Taking the facts and circumstances of this case, if you can say that, by the failure of the railroad company

to obey this statute, John Ward, without any fault on his part, lost his life, your judgment should be in favor of this petitioner.

The contention in favor of the railroad company is that John Ward, in stepping off the locomotive, caught his heel, and lost his life in a way that shows that if the blocking had been there it would have made no difference with this calamity. If you believe that, your verdict will be in favor of the railroad company. If he did not lose his life by the negligence of the railroad company, he is not entitled to recover from it. If, on the other hand, he lost his life through the failure of the railroad company to obey the statute, your verdict will be in favor of · the administrator. This is a simple issue for you to answer, and I believe that you can answer it in the spirit to which I have called your attention, and which should guide you in the discharge of your duty.

You will observe that this statute is entitled "for the protection of railroad employes." Its language is that it is to prevent the feet of its employes from being caught therein. Now, John Ward was an employe of the Lake Shore Company. The proof is that at this particular point where he lost his life there was a delivery track, at which the Wabash Company received from the Lake Shore Company cars to be delivered and transported by the Wabash Company, and, in order that each of these companies might, in a business-like manner, transact that business of transferring these cars, each of them had a young man, whose duty it was, in the making up of these trains at that place, to go to the cars as they were delivered in that neighborhood, where this guard-rail was, and to take down the numbers of the cars, inspect their seals, examine the condition of the car itself, and make a report respectively to his employer as to these facts. It is obvious to you, gentlemen, that these young men were engaged in a necessary duty to each of these railroad companies; that that duty was mutual and joint, as between each other. Good business conduct required that these railroads should transact it in some way that would keep up with the delivery of the cars, so that each company would have a check upon the other, as to the condition of the cars and seals. That was a joint, mutual, and necessary process to each of them. It is my opinion, and the court so charges, that the word "employe" used in this statute, does not mean simply those men on the pay-rolls of the Wabash Company, who were in one sense its only employes, but it means all employes and servants authoritatively engaged in and about the tracks, and guard-rails, and frogs of the Wabash Company. It protects all railroad employes whose duty it was to the Wabash Company, or any other company permitted to use that track, to move in, and about, and over these guard-rails and frogs, in the transaction of this delivery business of the Wabash Company. It would be an unreasonable construction of this act to hold it was made to protect only such men as were the employes of the Wabash Company, in the sense that they received their employment from that company, and received their pay from it, and were on its pay-rolls. The legislature of Ohio never meant such a thing as that. It meant all those who by rightful authority of the Wabash Company were engaged in and about the business of

walking over these frogs and guard-rails. I charge you that, under a reasonable construction of this act, John Ward was within the protection of this act, and in the protection owed by the Wabash Company to that class of railroad employes.

It is alleged in defense in the petition and argument had before you, notwithstanding that the jury may find, if it should find, that John Ward lost his life through this neglect of the receiver to fill this guard-rail, that he himself has contributed to his own death by negligence on his part. In other words, that he brought his death upon himself, by his own negligence. There has been no subject upon which the courts have had as much trouble and controversy as upon the subject of contributory negligence as a defense in actions like this. I think that the rules of the supreme court of the United States are binding on this court, and have established about this proposition: That wherever a person is charged with negligence, and it shall turn out in the proof that the person who has been injured has by his own negligence, which the jury can see, brought about his death or injury, he cannot recover, although the other party was negligent, and be that negligence never so gross. It is urged in this case that, if the railroad company shows a reckless disregard of its duty, that willfulness and character of negligence precludes it from relying upon the defense that the other side contributed to his injury. That is so in a large class of cases. I think it has not been so applied by the courts, at least, by the supreme court of the United States, and then it does not apply to that class of regulations to which this belongs. This is a police regulation, like those regulating the blowing of whistles and the ringing of bells, and the like conduct of railroads; and I do not think the negligence of a railroad company to comply with them is in itself of that kind of willfulness and wrong-doing and reckless disregard of its duty which would impose upon it a forfeiture of the right to rely upon the negligence upon the other side as a defense to an action like this. If you find that John Ward, by any act you can see he did in this case, contributed to his own death, it is a full answer to this petition. What are the facts charged against him? It is said he was improperly riding upon the foot-boards of that engine. If that is true, he ought not to recover. But is that true? Certain rules have been read to you in the matter of riding on engines. I think it is very doubtful, on examination of those rules, whether they were intended to apply to the movement of cars in making up trains upon a yard like this, and to this kind of work; but, conceding that, I charge you that, if they do, and were intended by the railroad company to apply to a situation like this, it is undisputed, under the facts of this case, that the rule was not enforced by this company. The railroad officials agree that they were not enforced at all, and these young men were permitted to ride upon this pony engine, and were doing only what they were in the habit of doing. Surely, a railroad company cannot ask a court and jury to enforce a rule that they do not enforce themselves. They cannot rely upon it as a defense when they violate it themselves. Now, it is my belief that it was not enforced because it was not intended to be enforced. In such a place,

and in this character of services, it is inconvenient, to say the least of it, to enforce it; and it is more convenient for everybody in the business of the railroad company to ride on these yard-engines, and to go speedily to their work, than it is to enforce that rule. If that be the reason, then it does not apply; or, if the fact be that they did not enforce it in fact, and this young man was in the habit of riding upon this foot-board, with their knowledge and consent, or with the knowledge and consent of those agents whose duty it was to enforce it, namely, the locomotive engineer, contributory negligence, under circumstances of that kind, cannot be set up by the railroad company, in respect to the fact that he was riding on the foot-board. That determination commends itself to the intelligence of all fair men. It is unreasonable to say, and I would not support the verdict of a jury that should find, the party was guilty of contributory negligence, when the railroad people confess on the witness stand that the regulation was wholly disregarded by them; and I charge you that that act cannot be treated as contributory negligence.

It is said that he knew of these defects of the guard-rail, and that he was voluntarily in the employment of the railroad company, and was there notwithstanding the neglect on the part of the railroad company; and therefore he cannot recover, because of his own neglect of being in and about a place that was dangerous. Upon that subject, I say to you that every man who employs himself in a hazardous undertaking takes the ordinary risk that there is about it, and that reasonably attaches itself to the employment itself. He goes in and about the business with the understanding that it is hazardous; and whenever he knows that any particular defect exists, and, understanding that, he goes on, and engages in the business, and does not call the attention of his employer to it, and does not object to it, nor leave it and abandon it,—if he knows the facts, and, notwithstanding his knowledge, continues in the employment,—then his loss is by his own fault, and there is no doubt about it. It is an essential element of this rule of law. He must know, and appreciate, and understand, at the time he engages in the business, that it is dangerous, and the defect does exist. He may presume, and you may presume for him, in the absence of testimony, that these laws and by-laws, regulations, and reasonable requirements for the protection of employes were to be complied with by the railroad company. In order to charge him with that kind of negligence, it must appear in proof, or must be reasonably inferred, that he had a knowledge of the defect,—that he knew it existed,—and, notwithstanding that knowledge, he continued to risk his person and life by being in and about the dangerous places. If you can find from the proof that he knew of that condition of the guard-rail, and, notwithstanding, engaged in the hazardous employment, it was his own fault or risk, I should say, for him to continue in the use and employment of a dangerous track when he knew and was sure of the danger.

In the next place, it is said that he acted negligently in leaving the foot-board and the pony engine. Now, if you see from the facts and circumstances that he recklessly, and carelessly, and negligently stepped

off the engine, or in front of the engine; that he did not use prudence that ordinary and reasonable men use in doing a dangerous thing; that he recklessly and carelessly threw his life away, so to speak, by getting off in front of the railroad engine when he ought to have got off on the side,—if you can say from the proof, or if you believe it is a reasona- ble and fair inference from the facts and circumstances, as you see them in proof, that he threw his life away by negligently stepping upon this open guard-rail, with knowledge of his danger, or that he negligently put himself in front of the engine, when he ought to have used the pre- cautions that ordinary men do,—he cannot recover in this case.    But if you find, on the other hand, that he, under the facts and circumstances of this case, did not act with that recklessness and disregard of the rea- sonable precautions that a prudent man ought to take in getting off an engine; and that he lost his life by stepping upon this open and unfilled guard-rail, through the negligence and failure of the railroad company to comply with this statute; and that he was not in fault in any of the respects I have mentioned,—then his administratrix is entitled to recover in this case.    The question for you to determine is whether or not John Ward was guilty of any of this improper and imprudent, negligent, and careless action on his part which brought about his death.    If you find that there is not any proof, to your satisfaction, that he lost his life with- out some such act on his part, or that he was without fault himself, the defendant would be entitled to a verdict.    The plaintiff must not only prove that John Ward lost his life through the negligence of the railroad company, but likewise that it was lost without any negligence on his part, and that Ward was not guilty of any of these acts of negligence on his part which contributed to the result.

Now, all of these questions you are to decide, and decide in the man- ner and spirit I have already indicated on that part of the case.    As to the character of the negligence, I have said all I deem it necessary to say.    It only remains for me to say, if you find the company liable to John Ward's administratrix for his death, the next question is, what shall be the measure of his damages?    In other words, what shall his administratrix recover as compensation in damages for the wrongful and negligent act of the railroad company?    The law has no delicate scales with which to weigh the value of a human life, in such case as this.    As has been said to you in the argument, for a long time in the history of our jurisprudence there was no right of action against the wrong-doer where a man was killed.    In modern time, acts have been passed per- mitting recoveries for such killing; but the statutes of Ohio, as do most of the statutes of other states, have eliminated from the consideration of the damages all questions of sympathy and suffering, all questions of suffering, wrong, or injury to the person who has been killed, because, as to him, the reason that lay at the foundation of the rule still applies, and his wrongs, and injuries, and suffering are buried in the grave, with him.    It is only for the injury to those to whom this right of action has been given that these statutes apply.    It is in this case the injury to Mrs. Ward, the mother, and to his sister.    The statute says, in terms, that

it shall be for the pecuniary loss to them; not for any suffering they have had, for any mental agony they have endured; not for any suffering he has endured; because the common law, as to that, applies, and there is no right of action. So far as Mrs. Ward and Miss Ward had an interest in his life, you are authorized to give them a fair compensation in money for the value of that life to them. It is a cold question of dollars and cents. It is for you, gentlemen of the jury, upon the proof in this case, looking to this young man, his physical condition, his age, habits, his industry as a wage-earner and bread-winner,—a man useful to his mother and sister in a pecuniary point of view, considering his expectation of life, and their expectation of his aid and help,—to estimate and say what was the value of John Ward's life to his mother and sister in dollars and cents; and that sum you should give to him, if you find the railroad company negligent. No other sum are you authorized by law to give them. When you consider your verdict, take up these facts and circumstances. You will first determine whether or not this railroad company has been guilty of negligence; and there is no doubt about it, if they did not block that guard-rail. Did John Ward lose his life by reason of the failure? Or, notwithstanding that failure, did he contribute by any act? If you answer that the railroad company was negligent, and that John Ward himself was not negligent, then, to the extent to which I have indicated to you, you will consider the question of damages. The law authorizes you to make full and fair compensation. The law does not authorize you to loot the railroad company. The chancellor would wholly disregard any verdict which you might give which went beyond the limitation which I have indicated to you. The simple question with you in measuring damages is to fully and fairly compensate them for their pecuniary loss, not in a niggardly, not in a stingy and mean, sort of a way; but to estimate it so that the fair and reasonable judgment of all men would say you have given them a full and fair compensation for the interest they had in the life of this young man, who was negligently killed by the railroad company, if you find he was negligently killed by the railroad company.

The issues submitted to you are as follows: If you find the said John Ward came to his death through the negligence of the said respondent, as averred in the intervening petition, say "Yes." If not, say "No." The second issue is whether the said John Ward was guilty of negligence which contributed to his death, as averred in the answer of the said respondent. In the same way, if you find John Ward was guilty of this negligence, you say "Yes." If not, say "No." If you answer the first of these questions "Yes," that the railroad company was guilty of negligence; and "No," John Ward was not,—you go further, and find your damages. The statute of Ohio on this subject imposes a limitation of $10,000, and beyond that you cannot go. Take the case, gentlemen, and fill in your answers to these issues as they have been drawn.